2026 IL App (1st) 242583-U

No. 1-24-2583

Filed July 22, 2026

Third Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| AARON CHANDRAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 L 9024 |
| | ) | |
| LYDIA LEFFELMAN and | ) | |
| PRESENCE BEHAVIORAL HEALTH, | ) | Honorable |
| | ) | Michael B. Barrett, |
| Defendants-Appellees. | ) | Judge, Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Rochford and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Plaintiff filed professional negligence claims beyond the statute of limitations period. No genuine issue of material fact exists as to when the plaintiff had the requisite knowledge to trigger the limitations period. Plaintiff offered no evidence to dispute the authenticity of his messages threatening legal action more than two years before he filed his complaint. Plaintiff failed to demonstrate a special injury to sustain a malicious prosecution claim.

¶ 2    Aaron Chandran appeals the circuit court's grant of summary judgment. For the following

reasons, we affirm.[1]

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 3                                    I. BACKGROUND

¶ 4         Chandran sought treatment for alcohol use disorder in the Spring of 2017. At the time, he was 24 years old, had a bachelor's degree in engineering from Purdue University, and was employed as an analyst at J.P. Morgan Chase Bank. After being discharged from inpatient detoxification treatment, Chandran was referred to an intensive evening outpatient program at Presence Behavioral Health (PBH).

¶ 5         The program was overseen by Craig Rodich, a licensed clinical social worker. Lydia Leffelman, then age 28, was working at PBH as an intern in conjunction with her pursuit of a Master of Social Work degree from Loyola University Chicago. As a student intern, Leffelman was subject to the National Association of Social Workers (NASW) Code of Ethics. This was stated explicitly in Leffelman's "Learning Agreement" with PBH. Leffelman assisted in administering the evening outpatient program under Rodich's supervision.

¶ 6         Chandran completed the program in June 2017. Leffelman and Chandran began dating soon thereafter. The NASW Code of Ethics prohibits clinicians from forming romantic relationships with current or former patients. Chandran reentered PBH's outpatient program in the Fall of 2017. Leffelman was no longer working at PBH at that time.

¶ 7         Leffelman and Chandran's relationship ended acrimoniously in June or July 2018. On July 19, 2018, Chandran sent Leffelman messages via Instagram stating, "I will punish you for your annoyances, so be very, very careful," "I will hurt you if you test me in a vulnerable state," and "I will really legally, ethically, professionally, personally ruin you." A few days later, July 22, he sent her similar messages via Instagram and Facebook including, "Stupid b*** like you need to be put in their place by someone," "Die in a hole and your brothers will be better for it," "I could sue you

for negligence for your behavior," and "I will implicate you and your entire family in an extremely painful and expensive lawsuit *** you done crossed the wrong man."

¶ 8        At this time, Leffelman was working as a licensed clinical social worker at Thresholds, a mental health service provider. On July 24, Chandran left voicemail messages at Thresholds asserting Leffelman should be terminated due to "ethical violations" and "professional misconduct."

¶ 9        Around this same time, Chandran also left voicemail messages with Rodich, which Rodich transcribed. On June 22, he left a message telling Rodich, "I have something very urgent to tell you about your former star intern Lydia Leffelman *** What I'm talking about here is the kind of ethical violation that would make your dad blush." Two days later, Chandran left another message for Rodich saying:

> "I need to tell you about professional negligence; not on your part on the part of one of your interns: her name is Lydia Leffelman *** the two of us have been dating for the last year. Okay we tried to be it a secret from you best we can [*sic*]; but, you better believe I learned my lesson, I should have told you right away *** What I saying to you is this: if you care about the health and safety of your patients ***."

Chandran followed minutes later with a message stating:

> "[I]f you don't listen carefully, it's going to be a big problem for everybody *** Now you know better than I the court is across the street and the system works to serve people like me—so cross me at your own risk today *** However, if you try to trust Lydia over me then I assure you both will have a big legal battle on your hands that you don't need."

¶ 10       Over an hour later, Chandran left a message in PBH's general mailbox stating:

"I've been dating for the past year Lydia Leffelman. Lydia was an intern at [PBH] and she reported to Craig. Now I could do a lot of things including malpractice suits *** if I don't hear from [Rodich] today everyone is going to have a lawsuit on their hands *** If it's anyone's fault that works there, it's Craig's fault."

¶ 11        Weeks later, on August 7, Chandran posted a picture of a shotgun on Instagram and added the caption, "My next purchase." On August 9, he appeared at Leffelman's apartment and unsuccessfully sought to gain entry.

¶ 12        Six days later, Leffelman was granted an emergency order of protection against Chandran. Subsequently, both appeared for a hearing on a plenary order of protection, which the court entered upon the parties' agreement.

¶ 13        Chandran filed his initial complaint in this matter *pro se* on August 24, 2020, asserting claims of negligence against both Leffelman and PBH. In December 2020, Leffelman petitioned for a second order of protection against Chandran. She alleged he filed the lawsuit to harass her and damage her professional reputation. Leffelman further stated that since Chandran had followed through on his threats to sue her, she was afraid he would also follow through with his threats of violence. After an *ex parte* hearing, the court declined to issue an emergency order of protection, reasoning that Chandran's lawsuit did not warrant such relief. Thereafter, Leffelman withdrew her petition.

¶ 14        Chandran filed an amended complaint, adding a count of malicious prosecution against Leffelman based on her December 2020 petition for an order of protection. Although he was never served with it, Chandran alleged the petition caused him anxiety and was detrimental to his employment search, since the petition could be discovered in a background check.

¶ 15      Leffelman and PBH moved for summary judgment, asserting Chandran's negligence claims were barred by the two-year statute of limitations. The defendants contended Chandran's July 2018 social media and voicemail messages threatening legal action demonstrated his knowledge of his injury, making his action commenced in August 2020 untimely. In response, Chandran challenged the authenticity and admissibility of the messages. He also asserted that he only learned of Leffelman's wrongful conduct on October 29, 2018, when he was told during a counseling session that Leffelman had violated ethical rules by dating him.

¶ 16      During his deposition, Chandran claimed he did not remember sending the social media messages included in Leffelman's 2018-filed petition for an order of protection. When asked if he had any reason to doubt that he sent the messages, Chandran answered, "It doesn't sound like me. And if it was at the time ***, then I would have no idea what I was or was not doing." Asked to explain what about the messages did not "sound like him," he said, "Oh, just the wording *** It doesn't really sound like the way I phrase things." Chandran admitted the profile photo and username shown on the screenshot were the same as he had used on social media platforms. Chandran also admitted he called Leffelman's employer in July or August 2018, but he had no recollection of the content of his call.

¶ 17      As to the transcribed voicemail messages left with Rodich, Chandran attested by affidavit that he had no memory of leaving them. Chandran further attested that he doubted their accuracy, since he is not a lawyer and had not yet consulted one, but the transcriptions included terms and phrases such as "ethical violation," "court," "big legal battle," "malpractice suit," and "lawsuit."

¶ 18      The circuit court granted the defendants' motions for summary judgment, finding Chandran's negligence claims were barred by the statute of limitations. The court found Chandran's July 2018 messages established his awareness of a wrongfully caused injury, and the

limitation period commenced at that time. In addition, the court also granted Leffelman summary judgment on Chandran's malicious prosecution claim, finding he could not prove the required element of a special injury. This appeal followed.

¶ 19                                                    II. ANALYSIS

¶ 20        The purpose of summary judgment is not to try a question of fact, but to determine whether one exists. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). "Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Habdab, LLC v. County of Lake*, 2024 IL 130323, ¶ 18 (citing 735 ILCS 5/2-1005(c) (West 2024)). "Summary judgment can aid in the expeditious disposition of a lawsuit, but it is a drastic measure and should be allowed only 'when the right of the moving party is clear and free from doubt.' " *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 15 (quoting *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)).

¶ 21        A defendant moving for summary judgment bears the initial burden of proof to either (1) affirmatively demonstrate some element of the case must be resolved in their favor or (2) establish that the plaintiff lacks sufficient evidence to prove an essential element of the cause of action. *DiFranco v. Fallon*, 2023 IL App (1st) 220785, ¶ 65. If the defendant satisfies their initial burden, the burden shifts to the plaintiff to present a factual basis that would arguably entitle them to a favorable judgment. *Id*. ¶ 66.

¶ 22        We review the circuit court's grant of summary judgment *de novo*. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. We may affirm on any basis in the record, regardless of whether the trial court ruled on that basis, and even if we disagree with the trial court's reasoning. *Thompson v. LaSpisa*, 2023 IL App (1st) 211448, ¶ 28.

¶ 23                                    A. Negligence Claims

¶ 24          Section 13-212(a) of the Code of Civil Procedure (Code) (735 ILCS 5/13-212(a) (West 2020)) provides a two-year limitation period to commence an action for damages against a medical provider for an injury arising out of patient care. The parties agree this limitation applies to Chandran's negligence claims. Section 13-212(a) provides that the two-year period begins when the claimant knew or should have known of the existence of the injury. *Id*. Thus, the statute incorporates the discovery rule. "Under the discovery rule, the limitations period begins to run when the party seeking relief 'knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.' " *Parks v. Kownacki*, 193 Ill. 2d 164, 176 (2000) (quoting *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981)). The plaintiff need not have known the misconduct was actionable. *Id*. Rather, the limitations period begins to run as soon as the plaintiff had sufficient information about their injury and its cause to "spark inquiry in a reasonable person as to whether the conduct of the party who caused [their] injury might be legally actionable." *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 23. Generally, the date when the plaintiff had or should have had the requisite knowledge to trigger the limitations period is a question of fact. *Swann & Weiskopf, Ltd. v. Meed Associates, Inc.*, 304 Ill. App. 3d 970, 975 (1999). But the issue may be decided as a matter of law when (1) the facts known by the plaintiff are not in dispute and (2) only one conclusion can be drawn from them. *Id*.

¶ 25          Here, Chandran's multiple social media and voicemail messages from July 2018 demonstrate not only his belief Leffelman had wrongfully caused him injury, but that he believed he had a cause of action against her and PBH. His social media messages to Leffelman included the statements, "I could sue you for negligence for your behavior," "I will *** legally *** ruin you," and "I will implicate you in *** in an extremely painful and expensive lawsuit." He also left

voicemail messages at her office asserting she had engaged in "ethical violations" and "professional misconduct." In addition, Chandran left voicemail messages with Rodich, reporting he and Leffelman had dated following his initial evening intensive program at PBH. His messages included references to Leffelman's conduct as an "ethical violation" and "professional negligence." Chandran further warned Rodich of the prospect of a "big legal battle" and "malpractice suit." Thus, Chandran's own words in July 2018 reveal he was aware that (1) Leffelman had violated her professional ethics by dating him, (2) he was injured as a result, and (3) he could sue both her and PBH. Consequently, the defendants have presented evidence that the limitations period began to run no later than July 2018, making Chandran's initial complaint, filed in August 2020, outside the two-year limit. Therefore, the defendants have satisfied their initial burden to demonstrate that this action is untimely.

¶ 26        Accordingly, the burden shifts to Chandran to demonstrate a genuine issue of material fact exists as to when he had the requisite knowledge to trigger the limitations period. First, Chandran argues the trial court should have stricken Leffelman's affidavit in support of her motion for summary judgment, along with the incorporated exhibits, for either lack of foundation or contradiction with Leffelman's prior affidavit. But Chandran failed to challenge Leffelman's affidavit before the trial court and the court made no ruling on its admissibility. A party cannot attack the sufficiency of an affidavit for the first time on appeal. *DiFranco*, 2023 IL App (1st) 220785, ¶ 74. Accordingly, Chandran has forfeited this issue. *Id*. In addition, we fail to see any substantive contradiction between Leffelman's affidavits. Moreover, even if the affidavit attached to Leffelman's motion for summary judgment were stricken, a separate affidavit attached to PBH's motion and other exhibits within the record contain the same evidence. Thus, striking the affidavit would have no effect on our consideration of this appeal.

¶ 27    Chandran next argues the authenticity of the messages attributed to him is a genuine issue of material fact, which should have prevented the grant of summary judgment. Leffelman included social media messages with her 2018 petition for an order of protection. For some messages, she handwrote the content instead of providing a screenshot or other documentation depicting the messages on a social media platform. Thus, the sole evidence presented of those messages' existence is her testimony. Chandran contends the existence of those messages is a genuine issue of material fact due to Leffelman's "propensity for falsehoods." He asserts her lack of credibility is demonstrated by, among other things, her failure to disclose her relationship with Chandran to a PBH supervisor, as the NASW Code of Ethics requires.

¶ 28    But Leffelman's credibility is not at issue for deciding whether summary judgment is appropriate. "[A] court cannot make credibility determinations or weigh evidence in deciding a summary judgment motion." *Merca v. Rhodes*, 2011 IL App (1st) 102234, ¶ 46. Nor does arguing that a trier of fact might find Leffelman incredible establish the existence of a genuine issue of material fact. For summary judgment, the nonmovant:

> "may not defeat an otherwise appropriate motion for summary judgment by merely arguing that the trier of fact might not believe a particular affiant or deponent. Because every party opposing a motion for summary judgment could make that argument, accepting it would effectively eliminate the possibility of summary judgment ever being granted." *Larson v. Decatur Memorial Hospital*, 236 Ill. App. 3d 796, 801 (1992).

¶ 29    In addition to Leffelman's credibility, Chandran contends Rodich's credibility regarding the voicemail messages and their existence is at issue. Rodich claims he transcribed the messages, but the audio recordings were not preserved to verify the messages' existence and the accuracy of his transcriptions. Thus, evidence of the voicemail messages depends on Rodich's testimony and,

therefore, his credibility. Again, "[o]n a motion for summary judgment, the court cannot make a credibility determination." *Berglind v. Paintball Business Ass'n*, 402 Ill. App. 3d 76, 90 (2010). And since Chandran only offers argument as to Rodich's credibility, this does not establish a genuine issue of material fact to defeat summary judgment. *Larson*, 236 Ill. App. 3d at 801.

¶ 30    Apart from Leffelman's credibility, Chandran argues the authenticity of the social media messages is a genuine issue of material fact because they lack electronic date stamps or verification from the social media platform. He also suggests Leffelman could have fabricated the screenshot. For those reasons, Chandran contends the messages would be inadmissible at trial and, consequently, inadmissible to support a motion for summary judgment. See *Complete Conference Coordinators, Inc. v. Kumon North America, Inc.*, 394 Ill. App. 3d 105, 108 (2009) ("Evidence that would be inadmissible at trial is not admissible in support of or in opposition to a motion for summary judgment.").

¶ 31    To be sure, "authentication of social media poses unique issues regarding what is required to make a *prima facie* showing that the matter is what the proponent claims." (Internal quotation marks omitted.) *People v. Brand*, 2021 IL 125945, ¶ 44. " '[T]he potential for fabricating or tampering with electronically stored information on a social networking website is high and poses challenges to authenticating printouts from the website.' " *Id*. (quoting *People v. Kent*, 2017 IL App (2d) 140917, ¶ 118). Nevertheless, Illinois courts recognize that " '[social media] messages are akin to e-mails or text messages,' " which may be authenticated through circumstantial evidence. *Id*. (quoting *People v. Curry*, 2020 IL App (2d) 180148, ¶ 55).

¶ 32    Here, sufficient circumstantial evidence exists to authenticate the messages. The screenshot contains a photo and username Chandran admitted to using on Facebook and Instagram. More significantly, the content of the messages is consistent with Chandran's behavior at the time. His

messages threatened, among other things, "professional consequences." Correspondingly, Chandran left messages with Leffelman's employer, urging them to fire her for ethical violations. Similarly, Chandran left messages with Rodich and PBH, requesting they address the situation. Just as in his social media messages, Chandran threatened PBH with legal action. Furthermore, the social media messages were included in Leffelman's petition for an order of protection. Chandran did not contest the petition and consented to the order. These circumstances are sufficient to reasonably conclude Chandran authored the messages, thus making them admissible.

¶ 33     Chandran further argues that the authenticity of the social media and voicemail messages is in genuine dispute since he did not remember sending or leaving the messages. In addition, he has "reason to doubt" the messages because they do not "sound like [him]" and include language referring to lawsuits.

¶ 34     We find that Chandran has failed to present a *bona fide* factual issue as to the authenticity of the messages. See *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 724 (2010) ("the nonmoving party must present a *bona fide* factual issue and not merely general conclusions of law"). Notably, Chandran never denied sending the social media messages to Leffelman or leaving the voicemail messages with Rodich. His claimed lack of memory and assertion that the messages do not "sound like [him]" amount to no more than a mere possibility that the messages are inauthentic. See *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999) (finding expert testimony indicating "nothing more than a mere possibility that the product was defective" insufficient to create a genuine issue of material fact). In addition, words such as "court," "lawsuit," and "malpractice" are not uncommon legal terms. These words are commonly used and understood by nonlawyers. Moreover, Chandran earned a bachelor's degree in engineering and was an analyst at a prominent financial institution. Ultimately, Chandran's

claim of a genuine issue of material fact has no evidentiary support. "The suggestion that an issue of material fact exists, without supporting evidence, is insufficient to create one." *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.*, 318 Ill. App. 3d 571, 575 (2000).

¶ 35 Separately, Chandran argues that either the defendant should be equitably estopped from asserting a statute of limitations defense or equitable tolling should be applied to make his initial complaint timely. "[T]he doctrine of equitable tolling permits a court to excuse a plaintiff's failure to comply with a statute of limitations where because of disability, irremediable lack of information, or other circumstances beyond his control, the plaintiff cannot reasonably be expected to file suit on time." (Internal quotation marks omitted.) *Williams v. Board of Review*, 241 Ill. 2d 352, 360 (2011). Equitable tolling focuses on the plaintiff's circumstances and may be invoked even when the defendant is not at fault. *Id*. at 361. Though Illinois courts recognize this doctrine, it is rarely applied. *American Family Mutual Insurance Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 33.

¶ 36 In contrast, when the plaintiff alleges the defendant misled them into filing outside the applicable statute of limitations, the plaintiff is seeking to apply the doctrine of equitable estoppel. *Klancir v. BNSF Railway Co.*, 2015 IL App (1st) 143437, ¶ 21. To establish equitable estoppel in this context, the plaintiff must demonstrate: "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of [their] claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to [their] lack of reasonable due diligence in attempting to uncover the relevant facts." (Internal quotation marks omitted.) *Id*. ¶ 23.

¶ 37 Chandran's brief fails to clearly develop an argument on this contention. He fails to cite any extraordinary circumstances that prevented him from filing within the statute of limitations.

See *Thede v. Kapsas*, 386 Ill. App. 3d 396, 403 (2008) ("Extraordinary barriers include legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence."). Thus, Chandran has failed to assert a basis to invoke equitable tolling. Chandran does note several actions taken by PBH: (1) their failure to inform him that clinical interns were subject to the NASW Code of Ethics; (2) the delay of some months in Fall 2018 for PBH to determine if and how his treatment would resume; and (3) when Chandran requested his records in March 2019, PBH withheld seven pages that included Rodich's transcriptions of Chandran's July 2018 voicemail messages. However, Chandran's brief fails to articulate how these instances demonstrate that PBH misled him into filing outside the statute of limitations. In addition, Chandran's threats to sue Leffelman and PBH in his July 2018 messages demonstrate he had the requisite knowledge to initiate legal action by that time. Nothing prevented him from filing within the statute of limitations.

¶ 38 Similarly, we reject Chandran's alternate argument that section 13-215 of the Code (735 ILCS 5/13-215 (West 2024)) applies to make his action timely. Section 13-215 permits a plaintiff to commence an action within five years of the discovery of their cause of action when the defendant has fraudulently concealed the cause of action from the plaintiff. *Id*. "[T]he concealment necessary to toll the statute of limitations must consist of affirmative acts or representations calculated to lull or induce a plaintiff into delaying the filing of his claim or preventing him from discovering the claim." *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 38. PBH's alleged concealment of seven pages of his records occurred in March 2019, long after Chandran had threatened to sue Leffelman and PBH in July 2018. Thus, Chandran had already discovered his cause of action. Additionally, even assuming *arguendo* that he had not

discovered his cause of action by March 2019, it does not appear the content of the withheld pages would have disclosed the cause of action.

¶ 39   Next, Chandran argues the statute of limitations should be "liberally applied" to make his action timely since the defendants were made aware of Chandran's potential action by August 2018, and PBH completed an internal investigation on August 2, 2018. The authority Chandran cites, however, is not on point. *Edwards v. Safer Foundation, Inc.*, 171 Ill. App. 3d 793 (1988), concerned the refiling of a previously dismissed action and *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 16 Ill. App. 3d 709 (1975), concerned whether the discovery rule applied to an action for libel. Neither case stands for the proposition that a statute of limitations should be "liberally applied" to permit untimely actions when the defendant was previously apprised of the matter. We are not aware of any authority supporting Chandran's "liberal application" argument.

¶ 40   Last, Chandran contends the statute of limitations was tolled by Leffelman's effort to obtain an order of protection in 2018. He argues that filing the petition was itself an ethical violation and a continuation of the negligent conduct alleged in his complaint. For that reason, he claims the statute of limitations was tolled during the pendency of Leffelman's petition and did not begin to run until November 26, 2018, when the order of protection was entered. We disagree that Leffelman's petition for an order of protection was a continuation of a course of negligent acts. The nature of Chandran's claim is negligent medical treatment. A course of treatment will extend a limitations period when the plaintiff can demonstrate "(1) a continuous and unbroken course of negligent treatment, and (2) that the treatment was so related as to constitute one wrong." *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 739 (2001) (citing *Cunningham v. Merril Huffman*, 154 Ill. 2d 398, 406 (1993)). The end of formal treatment is the boundary for liability. *Id*. at 740. "Interactions

- 14 -

or communications that are not treatment may indeed be actionable *** but not as malpractice." *Id*. Manifestly, Leffelman's filing of a petition for an order of protection was not medical treatment and, thus, not a continuing course of treatment. Therefore, her filing did not toll the statute of limitations.

¶ 41      For these reasons, we find the facts are not genuinely in dispute and the only conclusion that can be drawn is that Chandran had the requisite knowledge to trigger the statute of limitations no later than July 2018. Therefore, his action is untimely, and the defendants are entitled to summary judgment on his negligence claims.

¶ 42                         B. Malicious Prosecution

¶ 43      Chandran also appeals the circuit court's entry of summary judgment on his malicious prosecution claim against Leffelman. To prevail on a claim of malicious prosecution, the plaintiff must plead and prove that "(1) the defendant brought the underlying suits maliciously and without probable cause, (2) the underlying suits were terminated in favor of plaintiff, and (3) the plaintiff suffered 'special injury' beyond the usual expense, time and annoyance involved in defending a lawsuit." *Independence Plus, Inc. v. Walter*, 2012 IL App (1st) 111877, ¶ 18. A special injury is required because "the courts should be open for litigants to settle their rights without fearing prosecution for doing so" and "the ordinary trouble and expense which arise from 'ordinary forms of legal controversy, should be endured by the law-abiding citizen as one of the inevitable burdens, which men must sustain under civil government.' " (Emphasis omitted.) *Id*. (quoting *Cult Awareness Network v. Church of Scientology International*, 177 Ill. 2d 267, 280-81 (1997)).

¶ 44      In his complaint, Chandran alleged that Leffelman's 2020 withdrawn petition for an order of protection was detrimental to his employment search, since it could be discovered in a background check. Even if Leffelman's withdrawn petition could be discovered in a background

check, this remains an ordinary consequence of litigation. Any petition for an order of protection will contain accusations of illegal or improper behavior. *Cf. id.* ¶ 23 ("virtually all civil actions sounding in tort involve accusations of illegal or improper conduct in some capacity. Such accusations are hardly 'special' but, rather, are entirely ordinary consequences of litigation."). For Chandran, the accusations in Leffelman's second petition were little more than a repetition of the accusations in her first petition, which, presumably, would also be discoverable in a background search. Thus, we fail to see how the second petition would influence a potential employer's assessment of Chandran's background.

¶ 45 On appeal, Chandran argues that he satisfied the special injury requirement since Leffelman's second petition repeated the allegations she made in her first petition, thus indicating an intent to harass Chandran. The special injury requirement seeks to balance "the societal interest in preventing harassing suits and in permitting the honest assertion of rights in our court rooms." *Cult Awareness*, 177 Ill. 2d at 284. Thus, when a party seeks to "harass the same party about the same thing," subsequent prosecutions will be considered malicious. *Id.* at 283 (quoting *Shedd v. Patterson*, 302 Ill. 355, 360 (1922)). So, for example, when "a large national corporation improperly induced its members to engage in a national campaign of simultaneous malicious prosecution," the plaintiff demonstrated a special injury because "a sustained onslaught of litigation can hardly be deemed 'ordinary.' " *Id.* at 285. But this case is nothing like that. Notably, Leffelman's first petition for an order of protection was adjudicated in her favor and she withdrew her second petition before Chandran was served with it. He simply has not demonstrated that he incurred any extraordinary expense or other consequence resulting from Leffelman's second petition.

¶ 46   For these reasons, we find Chandran cannot prove a special injury and Leffelman is entitled to summary judgment on Chandran's malicious prosecution claim.

¶ 47           III. CONCLUSION

¶ 48   Based on the foregoing, we affirm the judgment of the circuit court.

¶ 49   Affirmed.